UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                           **Plaintiff,**

  vs.                                                 1:23-CR-00205
                                                        (MAD)

THOMAS IAZZETTA,

                           **Defendant.**

_____

**APPEARANCES:**                                    **OF COUNSEL:**

**TOPOROWSKI LAW, PLLC**            **MATTHEW A. TOPOROWSKI, ESQ.**
PO Box 7271
Albany, New York 12224
Attorney for Defendant

**OFFICE OF THE UNITED**           **MELISSA O'BRIEN ROTHBART, AUSA**
**STATES ATTORNEY**
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198
Counsel for the United States

**Mae A. D'Agostino, U.S. District Judge:**

## ORDER

      On June 27, 2016, Defendant Thomas Iazzetta pled guilty in the Central District of California to three counts of Accessing a Computer Without and In Excess of Authorization and Obtaining Information, in violation of 18 U.S.C. §§ 1030(a)(2)(C), (c)(2)(A). *See* Dkt. Nos. 1-3; Dkt. No. 1-4; Dkt. No. 1-5 at 5. Upon his conviction, Defendant was sentenced to six months of imprisonment, followed by one year of supervised release, and ordered to pay $2.8 million in restitution and a $75 special assessment on December 15, 2016. *See* Dkt. No. 1-3. On March 14, 2023, the sentencing court entered an amended judgment, sentencing Defendant to six months of

1

probation and ordering Defendant to pay $2.8 million in restitution and a $75 special assessment. *See* Dkt. No. 1-4.  The judgment included a payment schedule that required Defendant to pay at least 10% of his gross monthly income, but not less than $50, whichever is greater.  *See id.* at 1.  The sentencing court stated that the restitution payment schedule was determined "from a consideration of the record [,]" *id.*, and noted, as part of the judgment, that "[i]f all or any portion of a fine or restitution ordered remains unpaid after the termination of supervision, . . . [D]efendant must pay the balance as directed by the United States Attorney's Office," *id.* at 5 (citing 18 U.S.C. § 3613).[1]

On May 25, 2023, this matter was transferred to the Northern District of New York and assigned to the undersigned.  *See* Dkt. No. 1.  On October 16, 2024, Defendant, proceeding *pro se* at the time, filed a letter motion requesting a reduction in his court ordered restitution.  *See* Dkt. No. 2.  On October 21, 2024, this Court denied Defendant's application.  *See* Dkt. No. 3.

Presently before the Court is Defendant's motion to modify the restitution payment schedule, submitted through counsel.  *See* Dkt. No. 4.  The Government opposes Defendant's motion.  *See* Dkt. No. 6.

Defendant argues that a material change in his financial circumstances requires a modification to the payment schedule of his restitution; he does not challenge the total amount of restitution imposed.  *See* Dkt. No. 4-1 at ¶¶ 11-19.  Defendant contends that, in considering his application for a modification, this Court must take into consideration his financial obligations to dependents as well as any deterioration of his economic circumstances.  *See id.* at ¶¶ 20-28.  Specifically, Defendant claims that he has a variety of costly health complications and has

---

[1] The amended judgment reflected a reduced monthly minimum payment, as the original judgment, entered in 2016, required Defendant to pay no less than $200 per month.  *See* Dkt. No. 1-3 at 1.

suffered an $88 decrease in monthly income due to termination of his employment. *See* Dkt. No. 4-3 at ¶¶ 6-24. In opposition, the Government argues that Defendant has not demonstrated a material change in his economic circumstances. *See* Dkt. No. 6 at 3-6. The Government submits that Defendant's financial situation is vastly different than what he represents, as he has "continued [to incur] extravagant monthly expenses, which have, in fact, exponentially increased since the time of his sentencing." *Id.* at 4. By way of background, the Government notes that, at the time of his sentencing, Defendant was collecting $3,158 in monthly Social Security Disability income and was "flagged for having unnecessary or excessive monthly expenses, including vacation ($100), beauty salon services ($20), toll road expenditures ($30), and religious contributions." *Id.* at 3.

"A court may adjust a restitution payment schedule—as opposed to the restitution amount—based on any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution." *United States v. Hanakis*, 645 F. Supp. 3d 120, 124 (E.D.N.Y. 2022) (quoting *United States v. Rodriguez*, No. 01-CR-497, 2022 WL 16849075, *2 (S.D.N.Y. Nov. 10, 2022)) (internal quotation marks omitted). Modification of an order of restitution is governed by 18 U.S.C. § 3664(k), which states:

> A restitution order shall provide that the defendant shall notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution. The court may also accept notification of a material change in the defendant's economic circumstances from the United States or from the victim. The Attorney General shall certify to the court that the victim or victims owed restitution by the defendant have been notified of the change in circumstances. Upon receipt of the notification, the court may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require.

Pursuant to § 3664(k), "a material change in the economic circumstances of a defendant subject to a restitution order may come to the court's attention from one of three sources: the defendant himself, the United States, or the victim." *United States v. Grant*, 235 F.3d 95, 100 (2d Cir. 2000).

Here, the Court agrees with the Government; Defendant has not demonstrated that he is entitled to a modification. In March 2025, Defendant certified under the penalty of perjury that his total monthly income was $3,255, which consisted of $3,167 in Social Security income and $88 in net income from wages. *See* Dkt. No. 6-5 at 10, 21. According to Defendant, his monthly expenses total $3,720, which exceeds his income. *See id.* at 10; Dkt. No. 4-1 at ¶ 13. On the financial disclosure form, Defendant also added a handwritten "entertainment" expenses column,[2] where he listed unspecified monthly expenses for "movie tix," "book to read," "dinner/lunch out," "museum," "vacation/plane tix," "hotel," "car maintenance," and "IRS debt." Dkt. No. 6-5 at 10. Accepting Defendant's representation that he has lost $88 in monthly income from his former employment at Dennis & Co., his monthly net income is now $3,167—nine dollars more than it was in 2023. *See* Dkt. No. 4-3 at ¶ 6; Dkt. No. 6 at 3.

Based upon the financial disclosure form alone, it would appear that Defendant has a negative monthly cash flow of approximately $440. *See* Dkt. No. 4-3 at ¶ 24. Despite claiming to have more expenses than income on a monthly basis, Defendant acknowledges that his monthly minimum restitution payment is $50 and states that he believes he could "pay at least that minimum amount, even though [he is] operating at a deficit monthly." *Id.* at ¶ 28.

---

[2] The financial disclosure form does not include "entertainment" expenses—this appears to be a category of Defendant's own creation.

With his motion, Defendant submitted documentation related to his medical conditions and various expenses that he incurred during 2025 including medical bills and bills for sewer service, gas and electric, water, car insurance, and vehicle loan payments. *See* Dkt. Nos. 4-7, 4-8, 4-9, 4-10, 4-11, 4-12. Many of these documents are single pages taken from larger documents with no additional context or substantiation.

Defendant's medical expenses are not insignificant. However, the Government has submitted evidence of unexplained extraneous monthly spending, far beyond what Defendant claimed on the financial disclosure form under the penalty of perjury. Defendant's Citizens Bank checking account statements, submitted by the Government, show tens-of-thousands of dollars in monthly transactions with various gambling platforms. *See* Dkt. No. 6-2. To boot, Defendant's American Express credit card statements and KeyBank checking account statements reveal hundreds, if not thousands, of dollars in monthly spending at cigar shops, restaurants, gambling platforms, and vacation destinations. *See generally*, Dkt. Nos. 6-3, 6-4. For example, Defendant's January 2025 KeyBank checking account statement shows $2,713.15 in withdrawals and fees at the Ritz Carlton and Hyatt Regency Casino in Aruba. *See* Dkt. No. 6-4 at 67.

Moreover, in the financial disclosure form, Defendant states his vehicle is a "Hyundai G80 2021," which was acquired in April 2021 for $66,000. *See id.* at 11. Hyundai does not make a model "G80," but the brand's luxury counterpart, Genesis, does. *See* Sohee Kim, *Hyundai launches Genesis premium car brand in bid to end profit skid*, Reuters (Nov. 4, 2015, 2:41 PM) ("South Korea's Hyundai Motor Co said on Wednesday it will launch a new global luxury car brand called Genesis . . . . The Genesis line-up will start with two sedans this year [2015],

including the existing second-generation Genesis sedan, to be rebranded the 'G80' . . . ").[3] Defendant's decision to purchase an expensive luxury vehicle in 2021 (before the March 2023 judgment) is not an adequate reason to modify the schedule of his restitution payments. *See United States v. Colasuonno*, No. 05-CR-1110, 2009 WL 3394707, *2 (S.D.N.Y. Oct. 21, 2009) (denying motion for modification of restitution payment schedule because, *inter alia*, the defendant's expenses "include[d] a number of unnecessary luxuries," such as luxury vehicles).

Defendant did not file a reply to the Government's opposition to his motion and, therefore, offers no explanation for these notable unnecessary expenses. Upon thorough review of the parties' filings, the Court finds Defendant has not been forthcoming regarding his income, spending, and ability to satisfy the terms of his restitution obligations.

Furthermore, none of the cases cited by Defendant support the conclusion that modification is warranted in the present matter. For example, in *United States v. Hanakis*, the court decreased the defendant's scheduled restitution payments from twenty five percent of his net monthly income to ten percent because the defendant's earnings decreased by approximately sixty percent from the time he had been sentenced. *See Hanakis*, 645 F. Supp. 3d at 124. Here, $88 per month is a far cry from sixty percent of Defendant's monthly income.

Defendant is correct that in *United States v. Conhaim* the Second Circuit expressly stated § 3664 requires the sentencing court to consider the needs of a defendant's dependents as a factor in imposing restitution. *See United States v. Conhaim*, 160 F.3d 893, 896 (2d Cir. 1998). But, upon review of the record, it does not appear that Defendant has any dependents. *See* Dkt. No. 6 at 5 ("Iazzetta only has one adult child, who is approximately 24 years old, and therefore, Iazzetta

---

[3] Perhaps Defendant's mislabeling of his luxury automobile was an innocent clerical error, but the Court finds it difficult to give Defendant the benefit of the doubt in light of the other indulgent spending fastidiously omitted from his submissions and disclosures.

has no financial obligations to any dependents"). On the contrary, Defendant splits many of his household expenses with his adult roommate/long-time girlfriend. *See* Dkt. No. 4-3 at ¶¶ 21, 24; Dkt. No. 6 at 5.

Ultimately, "[t]he propriety of a modification under [§ 3664(k)] 'is identified by an objective comparison of a defendant's financial condition before and after a sentence is imposed.'" *Colasuonno*, 2009 WL 3394707, at *2 (quoting *Grant,* 235 F.3d at 100). The sentencing court's March 14, 2023, judgment, which requires Defendant to pay 10% of his income towards restitution, was based upon a review of Defendant's financial situation at the time of sentencing. *See* Dkt. No. 1-4 at 1 ("The Court finds from a consideration of the record that the defendant's economic circumstances allow for restitution payments pursuant to the following schedule . . ."). Although Defendant does appear to be suffering medical problems, he has failed to demonstrate that his economic circumstances have substantially changed from the time that the sentence was imposed. Indeed, at the time of sentencing, Defendant was unemployed and collecting Social Security Disability income; the same is true today. *See* Dkt. No. 6 at 3-4.

To the extent Defendant's income has slightly decreased due to the loss of employment, the percentage-based payment schedule automatically accommodates such changes. As another district court noted, the sentencing court's "decision to calculate [the] defendant's payment schedule as a percentage of his income was in effect an accommodation to his financial situation that automatically adjusts his restitution payments in a proportionate manner to reflect changes in his income, to the benefit of the defendant." *United States v. Brill*, No. 99-CR-0827, 2007 WL 2274668, *9 (E.D.N.Y. Aug. 6, 2007).

For these reasons, Defendant has not shown a material change in his financial circumstances and the Court, therefore, will not modify his restitution payment schedule under §

7

3664(k) at this time.

As a final matter, to the extent Defendant argues that his placement on the Treasury Offset Program is improper, the Court finds that it lacks jurisdiction to entertain such argument. Defendant has not alleged that he has exhausted his administrative remedies and has not filed an original suit against the United States. *See United States v. Mayer*, No. 04-CR-100-1, 2010 WL 4916561, *1 (D.N.H. Dec. 3, 2010) ("The [Treasury Offset Program] is plainly an administrative practice and procedure under federal law that, by its terms, is available as a means to collect debts owed the United States. The procedure is established by statute and administered under implementing regulations, which provide due process to debtors against whom offset is sought . . . . [The] defendant must, in the first instance, seek administrative relief as prescribed by the statute and implementing regulations. Judicial review of administrative processes and decisions is available, of course, but it is limited, and to obtain relief [the] defendant would generally be required to show arbitrary, capricious, or plainly unlawful conduct on the part of the administrative decision-makers").

After carefully considering the entire record in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendant's motion for modification of his restitution payment schedule (Dkt. No. 4) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 23, 2026
      Albany, New York

Mae A. D'Agostino
U.S. District Judge